UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **T.D. WILLIAMSON, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 06-CV-0089-CVE-PJC |
| | ) |
| **PLANT SERVICES, INC. and TERRY ACREE,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss and Brief in Support (Dkt. # 15)[1] and Defendants' Motion to Dismiss Amended Complaint and Brief in Support (Dkt. # 31). Defendants argue that venue is improper in this Court and that the Court lacks personal jurisdiction over defendant Plant Services, Inc. ("PSI"). They also argue that plaintiff has failed to state a claim upon which relief may be granted, because the non-competition provision of the employment agreement is unenforceable.

**I.**

T.D. Williamson, Inc. ("TDW") is an electrical contracting firm that designs and manufactures systems to monitor and inspect oil and gas pipelines. TDW sells its products worldwide and alleges that its continued success depends upon servicing and maintaining its relationships with existing clients. In order to build relationships with clients, TDW has spent a significant amount of its resources to attract new clients and improve its goodwill in the pipeline

---

[1] This original motion to dismiss (Dkt. # 15) is moot. Plaintiff has filed an amended complaint and defendants raise the same arguments in their motion to dismiss plaintiff's amended complaint.

industry. Defendant Terry Acree ("Acree") was hired by TDW on July 20, 1994 and, by 2006, he was a senior sales representative for TDW in the United States. TDW operates six regional offices in the United States. Acree was assigned to a region encompassing North Dakota, South Dakota, Colorado, Wyoming, and parts of New Mexico and Nebraska. Acree's region did not include any part of Oklahoma.

TDW claims that it expended significant resources to train Acree regarding its sales strategies, product design, and pricing techniques. Acree also had access to customer lists, trade secrets, and other confidential information that would not be known outside of the company. TDW supplied Acree with a personal digital assistant ("PDA") containing customer lists and compact discs containing TDW's updated price lists. On January 16, 2006, Acree resigned his position at TDW and informed TDW he had accepted a position with another company. Acree took his remaining vacation time and his last day at TDW was February 3, 2006. During this interval, he agreed he would not work for another company. However, TDW alleges that Acree accepted employment with PSI as manager of tapping, plugging, and line freezing services sometime between January 16 and February 3, 2006, and was actively employed during this period. TDW also believes that Acree was training PSI employees and providing free or reduced cost services to PSI while he was still an employee of TDW. It claims that PSI knew that Acree was an employee of TDW and accepted these services without seeking consent from TDW.

As soon as Acree's vacation leave expired, he formally became an employee of PSI. According to TDW, Acree actively solicited business for PSI from TDW's customers while he was still an employee of TDW. On January 20, 2006, Acree contacted TDW customer El Paso Natural Gas Company ("El Paso") to inform it that Acree would be leaving TDW to work at PSI, and

attempted to solicit El Paso's business for PSI. TDW discovered that Acree and PSI were contacting TDW's customers, and terminated Acree's employment on January 20, 2006. On January 27, 2006, TDW sent a letter to Acree and PSI informing them of Acree's obligations under his employment contract. Specifically, the employment contract contained clauses related to the protection of confidential information and competition following Acree's employment. The relevant provisions of the employment contract state:

> 3.1   Upon separation from employment with TDW, Employee will promptly return to TDW all drawings, data, models, and other records that Employee acquired as a TDW employee and which are in his possession or control, whether or not such material is of a confidential nature, and/or constitutes Confidential Business Information.
>
> 3.2   Employee agrees for a period of two (2) years after separation of employment with TDW, Employee will not call upon, directly or indirectly, or solicit business of a competitive nature from any person, firm, corporation, or organization with whom Employee worked, became acquainted with, or learned about during employment with TDW and who is a TDW client.
>
> 3.3   Employee agrees that for a period of two (2) years after separation of employment with TDW, Employee shall not make known to any person, firm, corporation, or organization the names, addresses, or any information relating to TDW's clients, or any information relating in any way to TDW's trade or business relationships with such clients.
>
> 3.4   Any attempt on the part of the Employee to induce other TDW employees to leave the Company's employment and/or any effort by Employee to interfere with TDW's relationship with its other employees will be harmful and damaging to TDW. Employee agrees that during the term of his employment and for a period of two (2) years thereafter, Employee will not in any way, directly or indirectly, solicit, entice, or employ any person employed by TDW, or otherwise interfere with or disrupt TDW's relationship with its employees.

Dkt. # 28, Amended Complaint, at 10-11.

TDW alleges that Acree destroyed customer information in his PDA that was the property of TDW, and that Acree stole trade secrets and other confidential information from TDW. In March 2006, Acree visited El Paso and provided it a list of services and prices from PSI. El Paso was in Acree's region at TDW and he was aware of the services TDW provided to El Paso. Acree contacted Trigon Engineering, an established customer of TDW, on behalf of PSI. Trigon Engineering was in the same district that Acree worked for TDW, and he was aware of the services and pricing Trigon Engineering received from TDW. TDW also believes that Acree has attempted to solicit business from Kinder Morgan, a TDW customer, using confidential information obtained during his employment. TDW claims that all of these acts violated Acree's employment agreement and have interfered with TDW's business.

Acree's employment agreement contained a forum selection clause selecting the District Court of Tulsa County as the proper venue for any legal dispute between the parties. The clause provides that "[t]he parties agree that any actions relating to this Agreement shall be instituted and prosecuted in the District Court for Tulsa County, State of Oklahoma, and both parties waive the right to change or seek a change of venue for such actions." Plaintiff claims that the clause relates only to breach of contract claims arising out of the employment agreement, while defendant argues that any claims "relating to" Acree's alleged violations of the employment agreement must be litigated in the District Court for Tulsa County. The parties agreed that the employment agreement "shall be construed and interpreted according to the laws of the State of Oklahoma." Dkt. # 2, Agreement, at 15.

## II.

Defendants assert that the parties agreed to litigate all disputes arising out of the employment agreement in the district court for Tulsa County in the State of Oklahoma. In the alternative, defendants argue that a substantial part of the events giving rise to TDW's claim did not occur in the Northern District of Oklahoma, and venue is improper in this district under 28 U.S.C. § 1391(a). PSI asserts that it is not subject to personal jurisdiction in Oklahoma, and TDW's claims against it should be dismissed.

## A.

Acree argues that TDW is contractually bound to litigate all of its claims against him in the District Court for Tulsa County. The employment agreement states that "[t]he parties agree that any actions relating to this Agreement shall be instituted and prosecuted in the District Court for Tulsa County, State of Oklahoma, and both parties waive the right to change or seek a change of venue for such action." Dkt. # 33, at 9. TDW claims that this provision applies only to its breach of contract claim, and asserts that it is not required to litigate its tort claims in state court. TDW also argues that it would be a waste of judicial resources to require it to litigate actions in state and federal court, if the Court grants defendants' motion to dismiss the breach of contract claim. TDW is correct that PSI was not a party to the employment agreement. Therefore, PSI is not bound by the forum selection clause contained in Acree's employment agreement and, if this Court has personal jurisdiction over PSI and venue is proper, TDW can proceed against PSI in this Court.

Forum selection clauses are presumed to be valid and the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore

Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992). The party resisting enforcement of a forum selection provision "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953 (10th Cir. 1992). The Tenth Circuit has found that forum selection clauses fall into two general categories - mandatory or permissive. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997). A mandatory selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum." Id. (quoting Thompson v. Founders Group Int'l, 886 P.2d 904, 910 (Kan. Ct. App. 1994). A permissive forum selection clause permits suit to brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. SKKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578 (10th Cir. 1997).

The Court finds that the forum selection clause in this case is mandatory because of the clear language in the contract limiting the parties to one forum and the clear waiver of any objection to venue. See American Soda, LLP v. U.S. Filter Wastewater Group, 428 F.3d 921, 927 (10th Cir. 2005) (when the parties specify a particular venue and use the obligatory word "shall" the district court should construe the forum selection clause as mandatory); K & V Scientific Co., Inc. v. Bayerishe Motoren Werke Aktiengesellschaft, 314 F.3d 494 (10th Cir. 2002) (when forum selection clause uses obligatory language that limits venue to a particular forum the clause is uniformly treated as mandatory). The Tenth Circuit has held that when a forum selection clause refers to a particular county, it purposefully excludes venue in a federal court. Excell, 106 F.3d at 321 (holding that venue selection clause referred only to state court because federal courts base venue on districts

instead of counties). The language employed in this case was specific and displays a clear intent by the parties to litigate any claims related to the employment agreement in the District Court of Tulsa County, not the Northern District of Oklahoma. TDW does not challenge the presumption that forum selection clause should be enforced. Therefore, the Court finds that it should require TDW to litigate its claims against Acree that relate to the employment agreement in state court.

The parties disagree about the scope of the forum selection clause. TDW claims that it only intended for the parties to litigate breach of contract claims in Tulsa County, but that tort claims do not fall within the clear language of the clause. The general rule is that forum selection clauses do not include tort claims unless "the provision is broad enough to be construed to cover such claims or the tort claims involve the same operative facts as a parallel breach of contract claim." Cobank, ACB v. Reorganized Farmers Co-op. Ass'n, 170 Fed. Appx. 559, 567 (10th Cir. 2006).[2] In Cobank, the Tenth Circuit upheld the district court's dismissal of tort claims as well as contract claims, because the plaintiff relied on virtually identical allegations for its tort and contract claims. Id. at 568-69. This approach is consistent with other circuit courts that have enforced forum selection clauses for breach of contract claims and contract-related tort claims. Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 694-95 (8th Cir. 1997) (forum selection clause applied to contract-related tort claims even though plaintiff omitted a breach of contract claim); Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir. 1993) ("We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute."); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th

---

[2]   The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue not addressed in a published opinion and it assists the Court in its disposition of this issue.

7

Cir. 1988) (forum selection clause applies equally to contract and tort claims within the scope of the clause); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 203 (3d Cir. 1983) (failure to enforce forum selection clause for contract and tort claims would defeat the strong public policy in favor of forum selection agreements).

The breach of contract claim expressly falls within the provision and must be litigated in the District Court for Tulsa County, barring circumstances that would make application of the forum selection clause unreasonable. American Soda, LLP, 428 F.3d at 926-27. The burden is on TDW to show that enforcement of the forum selection clause would be unreasonable. Excell, Inc., 106 F.3d at 321. It would not be unfair or unreasonable to require TDW, an Oklahoma corporation, to litigate its claims in Tulsa County.[3] See Adams v. Bay, Ltd, 60 P.3d 509, 511 (Okla. Civ. App. 2002). TDW has not carried its "heavy burden" to prove that the forum selection clause it included in Acree's employment agreement is unenforceable. TDW also alleges that Acree committed the following torts and statutory violations: (1) tortious interference with business relations; (2) tortious interference with contract; (3) violations of the Oklahoma Trade Secrets Act, Okla. Stat. tit. 78, § 85 et seq.; (4) conversion; (5) violation of Oklahoma's Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51 et seq.; (6) breach of the duty of loyalty and unfair competition; (7) breach of the implied duty of good faith and fair dealing; and (8) civil conspiracy. Without discussion, plaintiff claims that all of these claims are factually distinguishable from its breach of contract claim. However, the non-compete language of the employment agreement covers a large range of subject matter, including direct or indirect competition, misappropriation of confidential information,

---

[3] If there was any unfairness due to geographical concerns, TDW would face the same problem litigating its case in federal district court in the Northern District of Oklahoma.

solicitation of current TDW employees, and the return of company property. If it were not for the employment agreement, TDW would not have tort or statutory claims against Acree. These claims are clearly related to Acree's alleged breach of the employment agreement, considering the broad category of post-employment actions prohibited by the non-compete language. Consequently, all of TDW's claims against Acree should be dismissed based on the forum selection clause.[4]

**B.**

PSI claims that it is not subject to personal jurisdiction in Oklahoma, because it does not conduct any business in Oklahoma, nor does it have any contacts with Oklahoma related to plaintiff's claims. Plaintiff has the burden of establishing personal jurisdiction over defendants, but this burden is not heavy. Intercon, Inc. v. Bell Atlantic Internet, 205 F.3d 1244, 1247 (10th Cir. 2000) ("Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."); Doe v. National Medical Servs., 974 F.2d 143, 145 (10th Cir. 1992) ("Prior to trial, the plaintiff is only required to establish a prima facie showing of jurisdiction."). The court must construe plaintiff's factual allegations as true. Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988). If the defendant produces affidavits that conflict with plaintiff's factual allegations, plaintiff's allegations are accepted as true to the extent that they are uncontroverted. Behagen v. Amateur Basketball Ass'n of the United States of America, 744 F.2d 731 (10th Cir. 1984). The allegations of an unverified complaint are insufficient to contradict factual claims in a defendant's affidavit refuting the

---

[4]  Because the Court is dismissing all of plaintiff's claims against Acree, the Court does not reach his argument that the employment agreement is unenforceable as a matter of law.

9

existence of personal jurisdiction. American Land Program, Inc. v. Bonaventura Uitgevers Maatshappij, N.V., 710 F.2d 1449, 1454 (10th Cir. 1983). However, if both parties submit affidavits supporting their claims, the Court must construe the facts in a light most favorable to plaintiff.

A court may only exercise jurisdiction over a defendant if the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). The minimum contacts analysis protects a defendant's due process rights by preventing them from litigating in distant forum where they could not reasonably expect being haled into court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A court may assert specific jurisdiction over a defendant if "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Even if the defendant's contacts with the forum are not related to the litigation, personal jurisdiction may exist when the defendant has sufficient unrelated contacts with the state that it would be proper to assert in personam jurisdiction over him. Helicopteros Nacionales de Columbia, S.A., v. Hall, 466 U.S. 408, 414 (1984). Plaintiff claims the Court has specific jurisdiction over PSI because PSI's contacts with Oklahoma were related to subject matter of this litigation. Plaintiff must show that: (1) defendant purposefully availed itself of the privilege of doing business in Oklahoma; and (2) that plaintiff's claims arise out PSI's contacts with Oklahoma. See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (10th Cir. 1998).

Oklahoma's long-arm statute permits the court to exercise personal jurisdiction "on any basis consistent with the Constitution of this state and the Constitution of the United States," so there is

no need to perform a separate due process analysis under both state and federal law. Fed. R. Civ. P. 4(k)(1)(A); Okla. Stat. tit. 12, § 2004(F); United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002). Plaintiff concedes that PSI was not physically present in Oklahoma, but argues that it purposefully interfered with an employment contract it knew was negotiated in Oklahoma. TDW claims that it engaged in a joint venture with PSI in Lost Cabin, Wyoming, and the profits of that venture returned to TDW's headquarters in Oklahoma. TDW also claims that PSI assisted Acree in soliciting two TDW employees, who worked in Oklahoma, to leave TDW. However, only TDW's allegation that PSI attempted to solicit a TDW employee based in Oklahoma is supported by an affidavit. TDW's other allegations are based solely on the amended complaint. PSI has submitted an affidavit from Thomas Thayer, president of PSI, stating that PSI is a Montana corporation that has not provided any services or sold any goods to customers in Oklahoma. In fact, he states that PSI is not registered to conduct business in the state of Oklahoma. Thayer's affidavit directly refutes plaintiff's allegations that any PSI employees received training in Oklahoma. When he hired Acree, Thayer claims that he was unaware that Acree signed a non-compete agreement with TDW, but was told by Acree that his territory with TDW did not include Oklahoma.

Federal district courts have a significant amount of leeway when ruling on a motion to dismiss for lack of personal jurisdiction. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). The Court does not find that PSI would be subject to personal jurisdiction in Oklahoma. PSI does not have enough general contacts with this forum to subject it to personal jurisdiction for any type of legal claim. General jurisdiction does not arise unless the defendant's activities in the forum state were "continuous and systematic." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996). Even if PSI and TDW engaged in a joint

venture in Lost Cabin, Wyoming, that does not show that PSI regularly conducted business in Oklahoma. PSI was not a party to Acree's employment agreement, and the fact that Acree signed the agreement in Oklahoma does not support personal jurisdiction over PSI. TDW's allegation that PSI posted images on its website that could be viewed by Oklahoma customers is vague, and does not show that PSI had any intent to direct its business activities towards Oklahoma residents. Soma Medical Intern. v. Standard Chartered Bank, 196 F.3d 1292, 1296 (10th Cir. 1999) (posting images on an informational website does not show an intent to direct activities toward the forum state). PSI does not maintain an office in Oklahoma and does not actively solicit business from Oklahoma residents. Even if PSI had some business contacts with Oklahoma, they were certainly not continuous and systematic.

There is no basis for the Court to find specific jurisdiction over PSI, because PSI's contacts with Oklahoma are unrelated to TDW's claims. "Specific jurisdiction may be exercised where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." Kuenzle v. HTM Sport-Und, 102 F.3d 453, 456 (10th Cir. 1996) (quoting In re Application to Enforce Administrative Subpoenas Duces Tecum of SEC v. Knowles, 87 F.3d 413, 418 (10th Cir. 1996)). The alleged joint venture was not in Oklahoma and it does not form any part of plaintiff's claims. Plaintiff maintains its corporate offices and trade secrets in Oklahoma, but this is not relevant to the Court's determination whether PSI directed activities toward Oklahoma. Union Carbide Corp. v. UGI Corp., 731 F.2d 1186, 1189-90 (5th Cir. 1984) (personal jurisdiction existed over defendant for claim of misappropriation of trade secrets because part of tort was committed in forum). Based on the allegations of the amended complaint, the trade secrets at issue were not

maintained in Oklahoma, but were stored on Acree's PDA. Even if PSI stole trade secrets, there are no allegations suggesting that any part of the tort was committed in Oklahoma. TDW's arguments are based on the premise that any PSI activity directed at Acree should constitute a minimum contact for purposed of personal jurisdiction in Oklahoma. However, the issue before the Court is not whether PSI could have foreseen that its actions would have an impact in Oklahoma; PSI must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." World-Wide Volkswagen Corp., 444 U.S. at 297. Even if some of PSI's actions indirectly affected an Oklahoma corporation, PSI did not purposefully direct its activities toward Oklahoma.

The Court does not have personal jurisdiction over PSI and has no authority to enter a judgment against it. The outer limits of the Due Process Clause do not allow this Court to hale a Montana corporation into this district, absent allegations that it regularly conducts business in Oklahoma or purposefully directed its activities towards this forum. Therefore, plaintiff's claims against PSI should be dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Brief in Support (Dkt. # 15) is **moot**. Defendants' Motion to Dismiss Amended Complaint and Brief in Support (Dkt. # 31) is **granted**. This case is hereby **terminated**; pending deadlines and hearings are **stricken**; other pending motions are **moot**.

**DATED** this 27th day of October, 2006.

_Claire V. Eagan_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT